**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
AMY C. JOHNSGARD (SBN 279795)
*ajohnsgard@sshhzlaw.com*
501 W. Broadway, Ste. 800
San Diego, CA 92101-3546
Tel: (619) 400-4990 / Fax: (310) 399-7040

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
9415 Culver Blvd., #115
Culver City, CA 90232-2616
Tel: (619) 400-4990

*Attorneys for Plaintiff Telon Weathington and the Proposed Class.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TELON WEATHINGTON, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC. and DOES 1-10.<br><br>Defendants. | Case No.: 2:25-cv-08752-PA-MBK<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**[*SEEKS STATEWIDE OR NATIONWIDE RELIEF*]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Telon Weathington ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Samsung Electronics America, Inc. ("Samsung Electronics") and Samsung Semiconductor, Inc. ("Samsung Semiconductor") ("Defendants" or "Samsung") and DOE Defendants 1-10. Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I. NATURE OF THE CASE

1. Samsung – the largest Android phone company in both the United States and the world – manufactures and sells the Galaxy S22, S22+, and S22 Ultra mobile phone ("Galaxy Devices" or "Product"). Samsung pushes out updates to its smartphones through pop-up notifications that continue to pop-up on the screen until the consumer clicks on the "update now" image. Unfortunately for Samsung's large customer base, in or around October 2024, Samsung deployed the One UI 6.1.1 update ("6.1.1 Update") to all Samsung Galaxy S22 and S22+ phones, including Plaintiff's phone. The 6.1.1 Update had a devastating impact on Plaintiff's and the putative Class Members' Galaxy Devices without warning: it rendered the phones inoperable by triggering an endless reboot loop, causing repeated crashing and data loss and ultimately failure (herein, the "Update Defect").

2. Thousands of Galaxy S22, S22+, and S22 Ultra users subjected to the 6.1.1 Update reported sudden device failure and boot looping immediately following the 6.1.1 Update, while seeking assistance and remediation through Samsung's support channels and online forums. Prior to selling consumers Galaxy Devices, Samsung was aware its Galaxy Devices were susceptible to critical and potentially fatal defects resulting from software updates, including catastrophic failures such as motherload damage and total device loss which updates such as the 6.1.1 Update can and have caused. Samsung was aware of the Update Defect

prior to or shortly after initiating the 6.1.1 Update rollout. Yet despite this knowledge, prior to sale, Samsung failed to disclose to consumers that the Galaxy Devices were susceptible to critical and potentially fatal defects and failed to take appropriate steps to warn users or to halt the 6.1.1 Update in a timely manner and has refused to provide affected consumers with meaningful remedies, such as free repairs or data recovery support.

3. As a result of Samsung's unlawful, unfair, deceptive, and/or fraudulent business practices, owners of the Galaxy Devices, including Plaintiff, have suffered ascertainable losses. Samsung's conduct was aggravated by its refusal to offer a recall, refund, or meaningful support, despite widespread and immediate user complaints.

4. Had Plaintiff and other Class Members known the Galaxy Devices were susceptible to critical and potentially fatal defects resulting from software updates, design, manufacturing, workmanship and/or materials defects prior to purchase, or about the Update Defect at the time of purchase or prior to installing the update, they would not have purchased the Galaxy Devices or would have paid significantly less for them.

5. As a result of Defendant's misrepresentation and omissions regarding the nature of the Galaxy Devices and the Update Defect, and the monetary and data-related costs associated with attempting to remedy the damage, Plaintiff and the Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by Samsung's conduct.

6. Defendant Samsung—a dominant force in the global smartphone industry—continues to profit in the billions from the sale of its Galaxy smartphones, including the Galaxy S22, S22+, and S22 Ultra models[1], while concealing serious known defects from consumers. Through false advertising, misleading marketing claims, and deceptive omissions, Samsung has

[1] https://news.samsung.com/global/samsung-electronics-announces-first-quarter-2025-results

misrepresented the functionality and reliability of its devices, despite knowing its Galaxy Devices are susceptible to critical and potentially fatal defects resulting from software updates, including without limitation that updates such as the 6.1.1 Update can and have caused catastrophic failures in affected devices, which has rendered many devices inoperable and worthless to the consumers such as Plaintiff who purchased them.

7. Reliable software stability and system functionality are core and material features of smartphones. Given that Samsung markets its Galaxy S22, S22+, and S22 Ultra line of devices as high-performance, AI-enhanced tools for work, communication, and everyday life, a defect that causes any type of device failure—such as repeated crashing, boot looping, or permanent bricking—renders the Product unable to perform its essential functions and therefore effectively worthless for its intended and advertised purpose.

8. Reasonable consumers expect that flagship smartphones—especially those sold at a premium price—will perform as advertised, particularly with respect to basic reliability. In an age where digital access, remote work, and mobile connectivity are indispensable, consumers' reliance on their smartphones is constant and critical. Devices marketed as intelligent, high-performance productivity tools are expected to deliver on that promise. Plaintiff and members of the Class would not have purchased the Galaxy S22, S22+, or S22 Ultra devices—or would have paid significantly less—had they known that the Galaxy Devices are susceptible to critical and potentially fatal defects resulting from software updates, such as Samsung's 6.1.1 software update, which carried a substantial risk of disabling their devices altogether, without adequate warning, remedy, or recourse.

9. As a result of the defective phones Samsung sold to them, Plaintiff and similarly situated consumers have suffered financial harm. They purchased these Galaxy Devices believing they would work as intended, on Samsung's false

and deceptive representations and omissions and paid a price that does not reflect the defective product's actual value. Consumers were deprived of the benefit of their bargain and are entitled to restitution, damages and all other available remedies under the law.

10. Plaintiff and class members suffered economic injury as a result of purchasing Samsung's defective Galaxy Devices. Defendants' sale of the Defective Galaxy Devices: (i) breached express warranties Defendant provided; (ii) breached the implied warranty of merchantability pursuant to the Song-Beverly Consumer Warranty Act §§ 1790, *et seq*.; (iii) breached the implied warranty of fitness pursuant to the Song-Beverly Consumer Warranty Act §§ 1790, *et seq*.; (iv) violated California Civil Code §§ 1750, *et seq*. (the Consumers Legal Remedies Act or "CLRA"); (v) violated California's Business & Professions Code §§ 17200, *et seq*. (the Unfair Competition Law or "UCL"); (vi) violated California's Business and Professions Code §§ 17500, *et seq*. (the False Advertising Law or "FAL"); and (vii) constituted unjust enrichment and violation of common law claims described herein. Plaintiff brings this action on behalf of a California class for damages, restitution, and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II. THE PARTIES

11. Plaintiff Telon Weathington is, and at all times mentioned herein was, an individual citizen of the State of California and resident of Los Angeles County. On or about July 13, 2022, she purchased a Samsung Galaxy S22+ smartphone for $1,148.75 through T-Mobile's online store. Defendants advertise their smartphones as high-end, reliable devices engineered for long-term performance and supported by extended software maintenance. Samsung did not warn Plaintiff that Samsung could literally ruin her phone through its update process and refuse to repair or replace her phone that Samsung destroyed. She used her phone at all times for normal personal use.

12. In or around October to November 2024, Ms. Weathington received repeat notifications from Samsung on her phone prompting her to initiate a software update. Within 24 hours of installing the 6.1.1 Update on her phone, her phone began exhibiting severe malfunctions—including persistent stuttering, freezing, random crashes, becoming stuck in a continuous reboot loop and getting hot to the touch. These issues rendered her phone, and those of similarly situated consumers, unreliable and in many cases completely unusable.

13. As a result, Ms. Weathington was no longer able to use the phone for normal personal use and suffered a total loss of access to critical and irreplaceable personal data, including photographs, notes, and documents. One of Samsung's own authorized service providers informed Plaintiff that her phone's motherboard had crashed and that the phone would no longer function properly. Upon further research, Ms. Weathington discovered her experience was consistent with widespread reports from other Galaxy Device users experiencing similar issues with their own Samsung phones. Despite acknowledging the nature of the problem in October 2024, Samsung has not offered any cost-free repairs or refunds.

14. After Ms. Weathington's phone died, she went to a T-Mobile store, one of Samsung's authorized retailers, and notified them of the defect but was told that there was nothing they could do because she did not have insurance, so they suggested a repair shop.

15. Ms. Weathington attempted to have her phone repaired at a certified Samsung repair center, but the technician could not get any data off the phone because upon powering up, the phone entered a continuous reboot loop cycle. The repair technician also noted that the phone got hot to the touch.

16. After multiple failed attempts at recovery by a certified technician, Ms. Weathington was advised that her phone was beyond repair and her data was irretrievable. Compounding the damage, Ms. Weathington had removed her

phone's insurance coverage just a week before the update, having paid off her device in full.

17. Ms. Weathington was informed by an agent of T-Mobile, which is one of Samsung's authorized retailers, that she would be responsible for all associated repair or replacement costs.

18. She was therefore forced to pay approximately $1,000 out-of-pocket to replace her phone.

19. Defendant Samsung Electronics is an active New York corporation with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

20. Defendant Samsung Semiconductors is an active California Corporation with its principal place of business located at 3655 North First Street, San Jose, California 95134. Plaintiff is informed and believes that Samsung Semiconductor was instrumental in the design and development of the alleged defective components that caused the defect when the 6.1.1 Update was pushed out to Plaintiff and Class member phones.

21. At all relevant times, including the Class Period, Samsung conducted substantial business within the State of California and throughout the United States. Samsung is responsible for the design, development, manufacturing/workmanship, marketing, promotion, distribution, and post-sale support of Samsung's consumer electronics products, including the Galaxy S22, S22+ and S22 Ultra smartphones. Samsung oversaw and controlled the design, development and dissemination of all software updates, firmware updates, representations and advertising related to the Galaxy S22 line of devices and made public assurances concerning the devices' durability, performance, and support longevity—including guarantees of up to **four years** of Android operating system

("OS") updates and **five years** of security updates.[2] Samsung also directed and authorized the release of software updates, including the October 2024 6.1.1 Update. The unfair, unlawful, deceptive, and misleading representations and omissions at issue in this case were prepared, approved, and disseminated by Samsung and its agents across California and the nation, with the intent of inducing consumers into purchasing Galaxy Devices under false pretenses.

22. The true names and capacities, whether individual, corporate or otherwise, of the defendants sued in this action as DOES 1 to 10, inclusive, are presently unknown to Plaintiff, and thus are served by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of the Doe defendants when they are ascertained. Plaintiff is informed and believes and, upon that basis alleges, that each of the fictitiously named defendants is liable for the causes of action set forth in this Complaint.

23. At all times herein mentioned, Defendants, and each of them, were the agents, principals, servants, employees, and subsidiaries of each of the remaining Defendants, and were at all times acting within the purpose and scope of such agency, service, and employment, and directed, consented, ratified, permitted, encouraged, and approved the acts of each remaining Defendant.

## III. JURISDICTION AND VENUE

24. This Court has personal jurisdiction over Defendants Samsung Electronics and Samsung Semiconductor because they are authorized to do business in the State of California and regularly conduct substantial business within this State. Samsung Semiconductor has a massive 1.1 million-square-foot

---

[2] Samsung Sets the New Standard of Four Years of OS Upgrades to Ensure the Most Up-to-Date and More Secure Galaxy Experience at https://www.news.samsung.com/us/samsung-galaxy-os-upgrade-one-ui-android-unpacked-2022/, stating "Eligible Galaxy devices include with four years of One UI and five years of security updates[1]: **Galaxy S Series:** Galaxy S22, S22+, S22 Ultra as well as Galaxy S21, S21+, S21 Ultra, S21 FE and upcoming S series devices".

site in San Jose, California that houses research and development and sales operations for Samsung's US semiconductor business. Samsung also has retail stores, customer service centers, and authorized retailers located throughout California, including in Los Angeles County.

25. Venue is proper in this Court because a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in this District, and because Defendants do business here. Samsung maintains retail and service operations here. Plaintiff purchased her Samsung Galaxy smartphone from a retailer located in Los Angeles County and experienced the defects and resulting harm in this District. Plaintiff also sought service and replacement from an authorized Samsung retailer and Samsung certified repair shop within this District.

## IV. FACTUAL ALLEGATIONS

26. The global smartphone industry is a multi-trillion-dollar market, with high-end smartphones representing a critical segment of consumer electronics. As of 2024, global smartphone shipments reached over 1.22 billion units annually, with premium models (retailing above $700) accounting for a growing share of total revenue. Samsung Electronics, through its Mobile eXperience (MX) division, has long positioned itself as a dominant force in the premium smartphone sector, competing directly with Apple for market leadership.[3]

27. The Galaxy S22 series, including the S22, S22+, and S22 Ultra——was launched in early 2022 with great fanfare and aggressive marketing. Samsung promoted the lineup as a collection of professional-grade, AI-powered smartphones designed for long-term performance, productivity, and everyday use.[4] It was marketed, along with the other devices in the S22 lineup, not merely as a communications device but as an intelligent productivity tool capable of

---

[3] https://canalys.com/newsroom/worldwide-smartphone-market-2024

[4] https://news.samsung.com/global/samsung-galaxy-s22-ultra-offers-the-ultimate-and-most-premium-s-series-experience-yet

supporting the demands of remote work, creative production, and high-performance multitasking.







28. In response to growing consumer expectations around device longevity and security, Samsung announced in 2022 that it would support its new Galaxy devices, including the S22 lineup, with **four years of major Android OS upgrades** and **five years of security updates**.[5] This promise was one of the first of its kind in the Android ecosystem and was designed to assure consumers that their investment in Samsung hardware would be supported and warranted well into the future.

29. For modern smartphone users, system updates are more than cosmetic upgrades; they are necessary tools to maintain compatibility, enhance performance, and secure personal data. Samsung explicitly emphasized these

[5] https://9to5google.com/2022/02/09/samsung-four-years-android-updates-galaxy-s22/

updates as value-adding features in the Galaxy S22 marketing materials, highlighting the device's ability to "get smarter over time" and remain "future-ready" through seamless software support.[6]

30. Reasonable consumers who purchased the Galaxy S22+ and other phones in the S22 lineup relied on these representations. In a competitive market where consumers are asked to pay upwards of $1,000 for a device, assurances of long-term functionality and reliable software support are not only material—they are central to the purchase decision. These buyers expected their devices to remain functional and optimized through the life cycle of the advertised updates.

31. In September 2024, Samsung initiated the global rollout of the 6.1.1 Update, its newest Android-based firmware, to a range of premium devices, including the Galaxy S22+ and other devices in the S22 lineup.[7] Contrary to Samsung's representations regarding the nature and quality of the Samsung Galaxy phones, the update rendered many devices inoperable. The update—intended to enhance performance and integrate new AI features—instead caused widespread device malfunctions. Thousands of users reported that their phones became stuck in boot-loops, experienced repeated crashes, or were bricked entirely after installing the update.[8]

> This Update is literally BRICKING the phones by starting with crashes, freezes, and ending with boot loops that go for hours and at the end the phone just not turning on anymore. They further noted that Samsung service centers required users to pay for motherboard replacements, despite the issue arising after a software update.

***

---

[6] https://news.samsung.com/us/one-ui-6-1-update-brings-galaxy-ai-features-to-galaxy-s22-series-and-more/; https://www.wired.com/story/samsung-galaxy-s22-ultra-deals/

[7] https://news.samsung.com/global/samsung-one-ui-6-1-1-expands-latest-galaxy-ai-features-to-even-more-users-around-the-world; https://www.androidpolice.com/one-ui-611-starts-rolling-out-galaxy-s22/

[8] https://www.androidheadlines.com/2024/12/one-ui-6-1-1-reportedly-leaving-galaxy-s22-units-stuck-in-bootloop.html; https://www.msn.com/en-us/news/technology/one-ui-611-reportedly-leaving-galaxy-s22-units-stuck-in-bootloop/ar-AA1wbre3;

> My phone stuck with boot loop post update. Reset and clear cache nothing works. Now it just keeps boot looping as long as it has charge and then dies.
>
> ***
>
> It was working so well until yesterday when it started to boot loop. The phone is almost not usable and sometimes it turns on only to crash in a couple of minutes…They also mentioned that the service center suggested a motherboard replacement, which is expensive.
>
> ***
>
> S22 bricked by One UI 6.1 update! It keeps boot looping and occasionally move forward, and crash shortly then boot looping again!!

32. The issue was so pervasive that professional reviewers also reported on users' experience:

> When Samsung pushed out One UI 6.1 to the Galaxy S22 series back in September, the update added some popular AI features. But a subsequent update, One UI 6.1.1, came with something that we're sure users didn't want. It came with a bug that caused the Galaxy S22 line to experience boot looping or stuttering on the display. - PhoneArena
>
> ***
>
> Several Galaxy S22 series users have started complaining about boot loop and stuttering issues after they installed the One UI 6.1.1 update. – SamMobile Report

33. These failures rendered phones in the S22 lineup unusable for their essential purpose: as a functional communication and computing device. Affected consumers lost access to stored data, applications, contacts, and cloud-linked services. Many were forced to perform factory resets or pursue costly third-party repairs—despite Samsung's warranty still being active in many cases.[9]

---

[9] https://www.forbes.com/sites/zakdoffman/2024/12/21/samsungs-update-failure-bad-news-for-millions-of-galaxy-users/; https://www.samsung.com/us/support/troubleshoot/TSG10002308/

34. Public complaints flooded online forums. On Reddit, users described the issue as "devastating," with one writing, "My phone has been rebooting all day. It's completely useless now."[10] On Samsung's own EU Community board, dozens of threads appeared under titles like "Galaxy S22+ Dead After 6.1.1 Update" and "Why Is Samsung Silent?" Many reported losing all their personal data and were unable to recover their phones without a full factory reset—if recovery was possible at all. For others, professional repair services were required, at significant cost to the user.[11]

> I got the One U.I update on my s22 on Tuesday and since then, it's been constantly freezing, lagging, and restarts itself continuously. I also noticed the battery drains way faster than usual, draining 1% every 2 minutes for me. Sometimes my phone will be fine and be working for an hour and then all of a sudden freeze and gets stuck in a boot loop and when the boot loop is done, it starts back up again after freezing when I open an app. I've already tried clearing cache partition, hard rebooting my phone, uninstalling apps, making sure all my apps were updated, but nothing has worked. I've seen a lot of people with similar experiences say that nothing has helped their phone at all so I'm not going to try a factory reset if it's not going to work…Definitely planning on just buying a new phone because Samsung doesn't care much about its users if this problem is happening to so many people specifically following an UPDATE, yet they aren't doing anything to look into it and fix it, at least I haven't heard anything.

35. While Samsung eventually acknowledged that its SmartThings Framework app was "causing some Galaxy devices to reboot," it failed to provide a uniform, effective remedy. No official recall was issued, and customers were

---

[10] https://www.androidpolice.com/one-ui-6-1-1-update-reportedly-bricking-some-galaxy-s22s-for-good/

[11] https://eu.community.samsung.com/t5/galaxy-s22-series/s22-ultra-boot-loop-issues-after-6-1-ui-firmware-update/td-p/11139835/page/4.

advised to perform self-repairs, including booting into safe mode, and uninstalling the SmartThings app—solutions that were ineffective for many bricked phones.[12]

36. In many cases, Samsung denied warranty coverage or refused to offer free repairs, even when the damage was clearly caused by its own software. This left consumers burdened with bricked phones, unexpected repair bills, and no reliable communication tool.

37. Samsung's marketing representations about the Galaxy S22's longevity, software support, and update reliability were materially misleading. While claiming to deliver sustained device optimization, Samsung failed to adequately test its own updates to ensure compatibility and stability with the hardware it sold.

38. Samsung also omitted any warning that its phones were susceptible to defects upon update and that the 6.1.1 Update could carry catastrophic risk—despite having rolled out the update in phased waves and likely receiving internal bug reports before the full global launch. Samsung's continued promotion of the Galaxy S22 as reliable, future-proof, and intelligent, particularly after widespread complaints emerged was deceptive and unfair under California law.

39. Had consumers known that Samsung's software updates could irreversibly damage their phones, they would not have purchased phones in the S22 lineup, or they would have paid substantially less. Samsung's own marketing positioned the phone as a premium, long-lasting product, but its conduct revealed a failure to meet the most basic consumer expectation: that a phone should remain operational after a manufacturer-issued update. One consumer summed it up clearly:

[12] https://www.gizmochina.com/2024/12/19/widespread-boot-loop-issue-reported-on-galaxy-s22-ultra-since-one-ui-6-1-update/.

> It's outrageous that a £1300 ($1,625) phone has failed in 23 months, and Samsung's response is a £500+ ($635+) repair quote for a phone which is laughably now only worth ~£400 ($500) brand-new.[13]

40. Instead, consumers were deprived of the benefit of their bargain and incurred financial, practical, and emotional harm due to Samsung's failure to live up to the most basic promise it made: that its phones would work.

**A. Samsung's Galaxy S22 Smartphones**

41. Samsung is a leading manufacturer and distributor of smartphones in the United States. The company plays a pivotal role in the mobile device industry, where it has consistently promoted itself as a pioneer in innovation and user experience.

42. The Samsung Galaxy S22 was launched in February 2022 as part of Samsung's flagship Galaxy S lineup. The device was marketed as a premium smartphone offering powerful performance, long-lasting hardware and software support, and advanced user experience features, including enhanced multitasking, top-tier camera capabilities, and high-speed processing powered by Samsung's Exynos and Qualcomm Snapdragon chipsets depending on the region.

43. In its marketing materials, Samsung promised customers that Galaxy S22 devices would receive up to four generations of Android OS updates and five years of security updates—claims that explicitly positioned the device as a future-proof investment for consumers seeking **long-term reliability**.[14]

44. Samsung further touted its "One UI" software layer as offering intuitive, stable, and optimized user experiences that would evolve with user needs and software enhancements. These representations were featured prominently in promotional content across Samsung's website, carrier partner sites, and product

---

[13] https://www.phonearena.com/news/one-ui-6.1.1-makes-some-galaxy-s22-series-handsets-unusable_id166040.

[14] https://news.samsung.com/us/new-samsung-galaxy-s22-s22-deliver-revolutionary-camera-experiences-day-night/#_ftn11

packaging.[15] These representations are false and misleading because the smartphones routinely fail to function after Samsung-created software updates were initiated on hundreds of S22 models, as users report once the software update ran, their phones were stuck in a boot loop, and in many cases the phone was rendered inoperable and the product ineffective for its advertised purpose.

**B. The UI 6.1.1 Update Defect[16]**

45. In October 2024, Samsung released the One UI 6.1.1 software update to Galaxy S22 users in the United States and globally. Shortly after the release, users began reporting severe issues, including complete device lock-ups, boot failures, black screens, motherboard crashes and phones becoming non-responsive or effectively "bricked," thereby rendering the devices non-functional.

46. These failures were not isolated. Following the release of the 6.1.1 Update, Galaxy S22 users across multiple regions reported widespread and severe device malfunctions, including boot loops, system crashes, and devices becoming entirely non-functional. These complaints appeared across various platforms—including Reddit and Samsung's official community forums—within days of the update's release, suggesting the issue was both immediate and widespread.[17] Samsung was tagged repeatedly in posts and direct complaints, and several customers reported that their issues began immediately after installing the update, underscoring that Samsung either knew or should have known of the effects of this specific defect shortly after the rollout began.[18]

---

[15] https://news.samsung.com/us/new-samsung-galaxy-s22-s22-deliver-revolutionary-camera-experiences-day-night/.com

[16] The Update Defect involves one or more components of the Samsung Galaxy phone, and may in fact be caused by a defect in the manufacturing, workmanship, design or materials used in addition to and/or a software or firmware defect.

[17] https://www.droid-life.com/2024/10/04/galaxy-devices-stuck-in-bootloop-following-app-update/

[18] https://www.reddit.com/r/samsung/comments/1hh9ma1/samsung_has_bricked_thousands_of_samsung_galaxy/.

47. Multiple users who sought assistance at Samsung-authorized service centers reported being informed that their devices required motherboard replacements or could not be repaired at all, and that repair costs would not be covered under warranty.[3] Some users stated that they were denied free repairs despite showing that the defect occurred immediately after installing Samsung's official update.[19] In at least one case, a customer was only able to obtain a replacement device due to having purchased separate protection coverage. These user accounts suggest that Samsung did not consistently offer relief for defects resulting from its own software and instead improperly shifted the cost of repair or replacement onto affected consumers.

### C. Samsung's Knowledge of the Specific 6.1.1 Update Defect Prior to and After Release

48. Samsung publicly asserts that all firmware versions undergo thorough testing before release, including optimization for performance, stability, and compatibility across device variants.[20] Despite these quality assurance protocols, the October 2024 6.1.1 Update caused widespread and severe functional failures in Galaxy S22 devices. Thousands of users across global markets—including the United States and Europe—reported that their phones became trapped in the Update Defect after installing the update.[21] One consumer described their experience like this:

> I've [had] the same Issue, after 1 week…of the update the phone suddenly stuck on boot loop, ironically, Samsung replies not relating this to the update and keep pushing us into the warranty issues. It's a disaster to launch an update [that] kills the users' devices and cause[s] a loss for their data and time. I was [a] loyal customer for Samsung products for more than 20 years, not anymore I think.

---

[19] https://eu.community.samsung.com/t5/galaxy-s22-series/s22-ultra-boot-loop-issues-after-6-1-ui-firmware-update-your/td-p/11255662.

[20] https://semiconductor.samsung.com/consumer-storage/support/faqs/internalssd-fw-sw/.

[21] https://www.droid-life.com/2024/10/04/galaxy-devices-stuck-in-bootloop-following-app-update/.

49. Samsung does not permit official rollback options once an update is installed, and the company did not issue a recall or pause the rollout in response to these early reports.[22] These facts, combined with the immediate post-update complaints flooding online support forums, suggest that Samsung became aware—or should have become aware—of the defect shortly after deployment. Nevertheless, Samsung proceeded with the full-scale global release of the 6.1.1 Update without meaningful public warning or corrective action.

50. The October 2024 6.1.1 Update Defect is not the first time Samsung has released a software update that rendered its Galaxy S-series devices non-functional. Samsung previously faced widespread complaints in early October 2024 when an update to its SmartThings Framework application caused several older Galaxy models—including the Galaxy S10, Note 10, A90, and M51—to enter continuous boot loops, rendering them effectively bricked.[23] Around the same period, Galaxy S21 users also reported that the One UI 6.1 update caused their devices to become inoperable, with users stating the phones entered persistent reboot cycles or failed to power on entirely.[24]

51. Despite having experienced these same or similar update-induced failures in its prior models, Samsung failed to adopt preventative measures or sufficient pre-release testing protocols to ensure stability on the Galaxy S22 before releasing the 6.1.1 Update. This recurrence of the same type of defect across multiple generations of Galaxy smartphones—each triggered by official Samsung updates—underscores that Samsung either knew or should have known prior to selling the Galaxy Devices that the phones were susceptible to critical and

[22] https://semiconductor.samsung.com/consumer-storage/support/faqs/internalssd-fw-sw/.
[23] https://arstechnica.com/gadgets/2024/10/samsung-update-bricks-phones-giving-harsh-reminder-of-data-backup-importance/.
[24] https://eu.community.samsung.com/t5/other-galaxy-s-series/6-1-has-bricked-my-s21-5g/td-p/10604299.

potentially fatal defects resulting from software updates and also before releasing the 6.1.1 Update that it would pose substantial risk to device functionality.

52. When confronted with reports of bricked Galaxy S22 units, Samsung neither issued a recall nor offered users a software rollback option. This silence, in the face of overwhelming evidence of harm, constitutes willful concealment and deceptive business practices.

**D. Samsung's Unconscionable Warranty and Failure to Remedy**

53. Samsung includes a number of warranties with a purchase of its Galaxy smartphones, including a limited one-year manufacturer warranty, covering the Galaxy S22. Under the terms of this one-year warranty, Samsung states:

> *Samsung warrants to the original purchaser that Samsung's mobile device product and accessories... are free from defects in material and workmanship under normal use and service for the period of one (1) year from the date of purchase.*[25]

54. However, the warranty explicitly excludes coverage for software-related issues unless they result from a defect in *materials or workmanship*. Samsung's official one-year warranty disclaims responsibility for:

> *Defects or damage resulting from... improper or unauthorized modification or repair" and "any software, including software added to the product through Samsung's factory-integration, third-party software, or the reloading of software.*[26]

55. Samsung, however, also includes with its Galaxy smartphones guarantees of up to ***four years*** of Android OS updates and ***five years*** of security updates, stating at https://www.news.samsung.com/us/samsung-galaxy-os-upgrade-one-ui-android-unpacked-2022/ that "Eligible Galaxy devices include with four years of One UI and five years of security updates[1]: **Galaxy S Series:** Galaxy S22, S22+, S22 Ultra as well as Galaxy S21, S21+, S21 Ultra, S21

---

[25] https://www.samsung.com/us/support/legal/LGL10000282/.
[26] *Id.*

FE and upcoming S series devices". Samsung, however, refused to honor such extended warranties for phones damaged by the 6.1.1 Update.

56. Nevertheless, even though Samsung authored, released, and promoted the 6.1.1 Update as part of its core software ecosystem, it routinely declined to cover device failures caused by that update, leaving consumers to bear the cost of repair or device replacement.

57. The terms of Samsung's limited warranty are procedurally and substantively unconscionable in this context. Samsung had exclusive knowledge of the risks associated with the phones it sold consumers and 6.1.1 Update but did not disclose them, leaving consumers with no meaningful opportunity to avoid the defect.

58. To ensure its Galaxy Devices would be fit for their intended use—*i.e.*, as reliable, high-performance mobile devices—Samsung should have exercised reasonable care in testing its software updates prior to public release. Had Samsung conducted adequate testing, or implemented standard rollback safeguards, it would have identified the risk that the 6.1.1 Update posed to device functionality. Instead, Samsung released the update without sufficient protections, causing thousands of devices to fail.

59. Samsung continues to market, distribute, and profit from its Galaxy S22 phones while withholding critical information about the risk of device failure tied to its own software. As a result, Plaintiffs and Class Members have incurred damages, including the amount paid for the devices and, in many cases, the additional costs of repair or replacement.

60. Plaintiff and Class Members each spent hundreds—if not thousands—of dollars on Samsung smartphones that no longer function as promised. Samsung, a sophisticated business entity specializing in consumer electronic devices such as mobile phones, knew that Plaintiff and the Class Members would use the mobile phones for the particular purpose they made them,

*i.e.* consistent mobile communication and app access, and Samsung had reason to know Plaintiff and Class Members were relying on its skill and judgment in furnishing products for such purposes. Moreover, Samsung emphasized reliability, longevity, and seamless software optimization—claims that have proven false.

61. Indeed, as numerous consumers have observed, the problem is not only that Samsung sold devices that it knew were susceptible to critical and potentially fatal defects and indeed failed due to a software defect—it is that Samsung has failed to meaningfully acknowledge or remedy the issue despite mounting complaints. When affected users contact Samsung Support, they are frequently met with generic troubleshooting suggestions, such as performing a factory reset or booting into safe mode—none of which address the underlying defect caused by the update. Some consumers report being told that Samsung is "aware of the issue" and "working on a fix," but no public statement or timeline for resolution has been provided. Others are advised to seek hardware repairs or to replace their phones entirely. In many cases, replacement units have exhibited the same software-induced defect, requiring consumers to restart the entire process and bear the cost.

62. Samsung has not offered any extended warranty coverage, reimbursement, or public acknowledgment of the scope of the issue. Its conduct has left consumers without recourse while continuing to profit from the sale and branding of its S-series phones as premium, durable, and software-optimized devices.

## V. CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of herself, and all others similarly situated.

64. The proposed class consists of the following:

> **<u>California Class:</u>** All consumers residing in the state of California who, within four years prior to the filing of this action, purchased Samsung Galaxy Devices, through the present.

65. The following persons and entities are excluded from the proposed class: Defendants, their employees, contractors, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

66. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

67. This action is properly brought as a class action for the following reasons:

a) The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believes that there are thousands of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

b) The disposition of Plaintiff's and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

c) The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

d) There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

1) Whether the Galaxy S22 smartphones were defective, including whether they were defectively designed, manufactured, or unfit for their intended use.

2) Whether Samsung's representations about the long-term reliability, software update support, and communication functionality of the Galaxy S22 devices were false, misleading, or deceptive.

3) Whether Samsung intentionally or negligently misrepresented or omitted material facts regarding the reliability and functionality of the Galaxy S22 smartphones to induce purchases.

4) Whether Plaintiff and Class Members reasonably relied on Samsung's representations or omissions in deciding to purchase the devices.

5) Whether Samsung breached express or implied warranties, including the implied warranty of merchantability.

6) Whether Samsung's conduct constituted false advertising, unfair competition, or violated the California Consumers Legal Remedies Act

7) Whether Samsung unjustly retained revenues from the sale of defective Galaxy S22 devices and should be ordered to disgorge those profits.

8) Whether Plaintiff and Class Members suffered economic harm, and the appropriate measure of damages, restitution, or other monetary relief.

9) Whether injunctive or equitable relief is warranted to prevent future harm, and the scope of such relief.

10) Whether Plaintiff and Class Members are entitled to attorneys' fees, expert costs, and litigation expenses.

e) Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise

to the claims of all Class Members and are based on the same legal theories;

f) Plaintiff will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel;

g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1) Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2) This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

3) Absent class certification of Plaintiff' claims, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct; and

4) Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68. Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

69. Plaintiff seeks damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

## CAUSES OF ACTION

### COUNT 1

***(Breach of Express Warranty)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

70. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

71. Plaintiff and the Class purchased their Samsung Galaxy phones with the reasonable expectation that the devices would function properly throughout the usable life of the product.

72. Defendant Samsung made statements of fact and promises to Plaintiff and the Class that the Samsung Galaxy S22 phones were of merchantable quality and fit for their ordinary use.

73. Defendants expressly warranted, through written affirmations of fact and promises, that the Galaxy Devices were free from defects in materials and workmanship and would perform reliably over time, including through guaranteed software updates.

74. Specifically, Samsung represented that Galaxy S22 devices would receive **four years of major Android operating system updates and five years of security updates** as part of its formal software support policy. Samsung

marketed these updates as a benefit of ownership[27], promising that the device would remain secure, compatible, and functional as new features were introduced. These affirmations were part of the basis of the bargain when Plaintiff and Class Members purchased their devices.

75. Samsung's website, advertisements, and promotional materials also described the Galaxy S22 as a reliable, high-performance smartphone "built to last" and "engineered to keep getting better" through regular, official software improvements.

76. These affirmations constituted express warranties within the meaning of California Commercial Code § 2313(1), which provides that:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

77. Defendant breached its express warranties by releasing the 6.1.1 Update for the Galaxy S22 which caused widespread and severe malfunctions, including but not limited to the Update Defect. As a result, the smartphones failed to perform as represented and became unfit for ordinary use shortly after installation of an official Samsung software update.

78. Samsung also failed to repair, replace, or otherwise cure the defective condition of affected Galaxy S22 devices despite receiving notice of the defect through widespread consumer complaints, warranty claims, and support inquiries.

---

[27] https://www.news.samsung.com/us/samsung-galaxy-os-upgrade-one-ui-android-unpacked-2022/, stating "Eligible Galaxy devices include with four years of One UI and five years of security updates[1]: **Galaxy S Series:** Galaxy S22, S22+, S22 Ultra as well as Galaxy S21, S21+, S21 Ultra, S21 FE and upcoming S series devices".

Samsung has not issued a recall, extended warranty coverage, or offered refunds, and continues to promote the S22 as reliable and future-ready despite knowledge of the defect.

79. The Samsung Galaxy S22 phones failed to perform as Defendants promised. The phones were not of the same quality as those generally acceptable in the trade, nor were they fit for the ordinary purposes for which such goods are used. In breach of its express warranties, the phones were rendered inoperable by Samsung's Update Defect.

80. Plaintiff took reasonable steps to immediately notify Samsung —and within Samsung's four and five year period for the Android operating system updates and security updates**.** The Samsung Galaxy S22 phones were not as represented, were not of merchantable quality, nor fit for their particular purpose.

81. Defendants were further put on notice of the Defect by the numerous complaints concerning the Defect, by Plaintiff's pre-litigation demand letter, and by the filing of this lawsuit. When Defendants placed the Samsung Galaxy S22 phones into the stream of commerce, it reasonably should have known of the Defect.

82. The defects in the Samsung Galaxy S22 phones were not open or obvious to consumers prior to purchase.

83. Any purported limitation of the duration and scope of the express warranties given by Defendants is unreasonable, unconscionable and void, because Defendants knew or recklessly disregarded that the Defect in the Galaxy S22 phones existed and might not be discovered, if at all, until the defective phones had been used for a period of time longer than the period of any written warranty, and Defendants willfully withheld information about the Defect from purchasers of Samsung's Galaxy S22 phones.

/ / /

/ / /

84. As a direct and proximate result of Defendants' representations and conduct, Plaintiff and the class have suffered injury and damages in an amount to be determined at trial.

85. Plaintiff and Class Members were injured as a result of Defendant's breach. Had Plaintiff and Class Members known that the 6.1.1 Update would render their devices non-functional, they would not have purchased the Galaxy S22, or would have paid significantly less for it.

86. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have suffered damages, including but not limited to loss of use, overpayment, and costs for repair or replacement of the devices.

87. Plaintiff and Class Members are entitled to recover all damages permitted by law, including consequential and incidental damages, as well as any equitable relief the Court deems just and proper.

## COUNT II

***(Breach Of Implied Warranty of Merchantability – Civil Code § 1791, et seq.)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

88. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

89. The Galaxy Devices are a "consumer good" within the meaning of Cal. Civ. Code §1791(a). Plaintiff and members of the Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b). Samsung Electronics and Samsung Semiconductor are both a "manufacturer" of the Galaxy Devices within the meaning Cal. Civ. Code § 1791(j).

90. Samsung Electronics and Samsung Semiconductor impliedly warranted to Plaintiff and Class members that its Galaxy Devices were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792;

however, the Galaxy Devices do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1) Pass without objection in the trade under the contract description;
> (2) Are fit for the ordinary purposes for which such goods are used;
> (3) Are adequately contained, packaged, and labeled; and
> (4) Conform to the promises or affirmations of fact made on the container or label.

91. The Galaxy Devices fail to perform as warranted and would not pass without objection in the trade, as they do not provide reliable—or even feasible—functionality for core communications tasks, including voice calls, system operation, and software stability. These failures undermine a central purpose for which the phones are marketed and purchased.

92. Similarly, the smartphones' inability to maintain operability following Samsung's own 6.1.1 Update renders them unfit for the ordinary purposes for which such goods are used—namely, consistent mobile communication, app access, and dependable software integration.

93. The smartphones were not adequately labeled or packaged in a manner that disclosed the risk of bricking or boot failure upon installation of manufacturer-issued software updates. To the contrary, the labeling and marketing explicitly represent that the devices are reliable, update-compatible, and engineered for long-term performance, which they are not. For these reasons, the Galaxy S22 devices do not conform to the promises or affirmations of fact made on their website, advertisements, or marketing materials.

94. Defendants breached the implied warranty of merchantability by selling smartphones that failed shortly after being subjected to a core manufacturer-released update. The devices were not of merchantable quality and were not fit for the ordinary purposes for which smartphones are used.

95. Notice of breach is not required under California law where, as here, Plaintiff and other Class Members did not purchase their Galaxy S22 devices directly from Samsung, but through authorized retailers or carriers.

96. As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiff and other Class Members did not receive the benefit of their bargain and instead received devices with a latent defect that substantially impaired their value. Plaintiff and Class Members were harmed by the product's malfunctioning, loss of use, and the expense of repair or replacement.

97. Pursuant to California Civil Code §§ 1791.1(d) and 1794, Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Galaxy S22 or the diminished value of the devices due to the defect.

98. Pursuant to California Civil Code § 1794, Plaintiff and Class Members are also entitled to recover attorneys' fees, costs, and expenses.

## COUNT III

***(Breach Of Implied Warranty of Fitness for a Particular Purpose)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

99. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

100. Plaintiff purchased the Samsung Galaxy S22 mobile phone from Samsung's authorized retailer, Amazon.

101. Pursuant to an agreement between Samsung and Amazon, Amazon is Samsung's authorized retailer and Plaintiff and the class are third-party beneficiaries of such contract.

102. At the time of purchase, Defendants knew or should have known Plaintiff intended to use the product for a particular purpose, mobile communications and app access.

103. At the time of purchase, Defendants knew or should have known Plaintiff was relying on their skill and judgment to furnish a product that was suitable for a particular purpose.

104. Plaintiff justifiably relied on Defendants' skill and judgment.

105. By placing its Samsung Galaxy phones into the stream of commerce, Defendants impliedly warranted the Galaxy phones were reasonably fit for their particular purpose.

106. Samsung's Galaxy phones are not fit for their particular purpose. In breach of the implied warranty of fitness for a particular purpose, the Update Defect causes device failure of several different types—such as repeated crashing, boot looping, or permanent bricking—which renders the Product unable to perform its essential functions and therefore effectively worthless for its intended and advertised purpose.

107. Samsung's Galaxy phones are not reasonably fit for their intended particular purpose when they leave Defendants' control and enter the market. Moreover, the defects in the Galaxy phones are not open and obvious to consumers.

108. Any purported limitation of the duration and scope of the implied warranty of fitness for a particular purpose given by Defendants is unreasonable, unconscionable and void, because Defendants knew or recklessly disregarded the existence of the defects in the Samsung Galaxy phones and might not be discovered until the Update 6.1.1 was issued and had been used for a longer period

of time than the period of the written warranty, and Defendants willfully withheld information about the susceptibility of Samsung Galaxy phones to defect and the Updated Defect from purchasers of Samsung Galaxy phones.

109. Due to the unequal bargaining power between the Parties, Plaintiff and the Class had not meaningful alternative to accepting Defendants' pro forma limitation of the duration of any warranties.

110. Plaintiff took reasonable steps to notify Defendants through one of Samsung's authorized service center technicians within a reasonable period of time that the Samsung Galaxy phone was nonfunctioning and thus unsuitable.

111. As a result, Plaintiff and the Class have been damaged in, inter alia, the amount they paid to purchase Samsung's defective Galaxy phones.

**COUNT IV**

***(Violation of California's Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

112. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

113. Defendant Samsung is a "person" as defined by Civil Code § 1761(c). Plaintiff and the Class Members are consumers within the meaning of Civil Code § 1761(d). The purchase of the Galaxy Devices by Plaintiff and the Class are "transactions" within the meaning of Cal. Civ. Code § 1761(e). The devices purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

114. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Samsung has engaged in unfair or deceptive trade practices that violated Cal. Civ. Code §

1770(a), as described above and below, by, among other things, representing that the Galaxy Devices had characteristics, uses, and benefits they do not have, including software reliability, hardware and system longevity, and compatibility with future updates; representing that the Galaxy Devices were of a particular standard, quality, or grade, when they were not; advertising goods with the intent not to sell them as advertised by claiming the devices were engineered to get better over time and were optimized for long-term performance, when in fact Samsung's own software update rendered them unusable and, failing to disclose a known defect that materially affects the performance and value of the product; representing the purchase of the Galaxy Devices conferred or involved rights and remedies that it does not have or involve. *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9), (a)(14).

115. Samsung knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

116. Plaintiff and Class members are reasonable consumers who expected that their Galaxy Devices would work as represented.

117. As a result of Samsung's conduct and unfair or deceptive acts or practices, Plaintiff and Class members suffered actual damages in that the Galaxy S22 do not function as represented and are not worth the amount paid and Samsung has deprived Plaintiff and Class members of the benefit of the bargain.

118. Pursuant to § 1782(a) of the CLRA, on April 29, 2025, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that within thirty (30) days from that date, it rectify the problems associated with the actions detailed above. The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Thirty days elapsed, and Defendant

failed to rectify the unlawful, unfair, false, and/or deceptive practices alleged herein.

119. Additionally, by their conduct described in this Complaint, Defendant has violated Civil Code §§ 1770(a)(5), (7), (9), and (14).

120. Under Civil Code § 1780, Plaintiff and the Class Members seek appropriate equitable relief, including an order enjoining Defendant Samsung from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

121. Additionally, any of the Plaintiff or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§ 1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

## COUNT V

***(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq.)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

122. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

123. Defendant's conduct described herein violates each of the three prongs of the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code § 17200, *et seq.*, as it constitutes unlawful, unfair, and fraudulent under each of the statute's three independent liability theories.

124. The UCL prohibits, and provides civil remedies for, "unfair competition". Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In

service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

125. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

126. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

127. Samsung's conduct related to the sale of its defective Galaxy Devices violated each of this statute's three prongs.

128. Samsung committed an **unlawful business act or practice** in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by its violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*., as set forth above, by the acts and practices set forth in this Complaint.

129. Samsung has engaged in **unfair business practices** in violation of California Business and Professions Code § 17200, et seq., by selling Galaxy Devices that suffer from a latent defect which causes them to fail during ordinary use, including essential functionality such as mobile communication and app access.

130. Samsung has also engaged in **fraudulent business practices** in violation of California Business and Professions Code § 17200, *et seq*., by knowingly and affirmatively misrepresenting that the Galaxy Devices were durable and thus capable of delivering consistent mobile communication and app access when it knew, or should have known, that the phones were susceptible to critical and potentially fatal defects resulting from software updates, including installation of the 6.1.1 Update that it knew or should have known would cause device failure. Samsung's marketing claims, including that its S22 phones are "the

most durable mobile device yet"[28] were false and misleading, as consumers reported widespread issues that prevented basic call functionality. Moreover, Samsung's continued failure to disclose the true nature and extent of the defect—while supplying equally defective replacement devices—was likely to deceive the public and induce reliance on the false premise that the phones were reliable and fit for long-term use.

131. As a direct and proximate result of Samsung's unfair and deceptive practices, Plaintiff and Class members suffered and will continue to suffer harm.

132. Plaintiff suffered injury in fact and lost money and property as a result of Defendants' unlawful and unfair business acts and practices, including: (a) Plaintiff would not have bought or leased Galaxy S22 phones had they known about the Defect; (b) Plaintiff's Galaxy S22 phones have a lower value than they otherwise would if not for the Defect; and (c) Plaintiff paid for diagnoses, repairs and replacement parts she would not and should not have paid for.

133. Pursuant to Business and Professions Code § 17204, Plaintiff and the class are entitled to an order of this Court enjoining such conduct on the part of Defendants, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Samsung received or saved as a result of its wrongful acts and practices.

134. As a direct and proximate result of Defendants' conduct, Plaintiffs and the class have suffered injury in an amount to be determined at trial. Plaintiff and the class are entitled to declaratory and injunctive relief, restitution and

[28] https://www.globenewswire.com/news-release/2022/02/09/2382053/0/en/New-Samsung-Galaxy-S22-and-S22-Deliver-Revolutionary-Camera-Experiences-Day-and-Night.html ("Our smartphone cameras have transformed the way we create, share, and communicate. Through photos and videos, we express ourselves and connect with the people we care about," said TM Roh, President and Head of Samsung Electronics' MX (Mobile eXperience) Business. "That's why we focused on designing our latest Galaxy S series devices with groundbreaking camera capabilities that work day and night, powered by our best mobile performance yet.")

disgorgement of all profits obtained from the acts of unfair competition alleged and other relief as authorized by law.

135. As a result of its unfair and deceptive conduct, Samsung has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

136. Plaintiff and the Class further seek an order enjoining Samsung's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

**COUNT VI**

***(Violations of the California False Advertising Law ("FAL") Bus. & Prof. Code § 17500, et seq.)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

137. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

138. The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, provides that:

> It is unlawful for any...corporation...with intent directly or indirectly to dispose of real or personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated...in any advertising device...or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

139. Samsung disseminated, and caused to be disseminated, through advertising, marketing campaigns, retail packaging, website content, and public product descriptions, statements about the Galaxy Devices that were false and/or

misleading. These representations were made in California and disseminated to consumers nationwide, including Plaintiff and members of the Class.

140. Specifically, Samsung represented that the Galaxy S22 was "engineered to last," and was designed to "get better over time" with official software updates. These statements were untrue or misleading because the Galaxy S22 was affected by a latent defect that rendered it non-functional or severely impaired after installing the 6.1.1 Update—an update provided by Samsung itself.

141. Samsung knew or should have known, through pre-release testing, consumer complaints, and its own internal diagnostic data, that the representations about device reliability, update support, and software stability were misleading. Nevertheless, Samsung continued to advertise and sell the devices without disclosing the defect.

142. These false and misleading statements and omissions were material and likely to deceive a reasonable consumer. Plaintiff and Class Members relied on Samsung's representations and omissions in deciding to purchase the Galaxy S22. Had they known the truth about the risks posed by Samsung's software updates, they would not have purchased the device or would have paid significantly less for it.

143. As a direct and proximate result of Samsung's false and misleading advertising, Plaintiff and Class Members suffered an injury in fact and lost money or property by overpaying for defective devices and incurring additional costs related to repair, replacement, or data loss.

144. All conduct alleged herein occurred in the course of Samsung's business operations, including the manufacture, marketing, and sale of consumer electronics.

145. Plaintiff, individually and on behalf of the other Class Members, seeks an order of restitution and/or restitutionary disgorgement of all amounts

obtained by Samsung through its false and misleading advertising, and any other relief the Court deems just and proper.

**COUNT VII**

***(Fraudulent Misrepresentation & Concealment)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

146. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

147. Defendant Samsung engaged in fraudulent and deceptive conduct by intentionally misrepresenting and concealing material facts regarding the reliability and functionality of its Galaxy S22 smartphones.

148. Through uniform advertising, product packaging, point-of-sale materials, and online marketing—including its own website, third-party retailers, and promotional campaigns—Samsung affirmatively represented that the Galaxy S22 devices were "engineered to last," "built to get better over time," and "optimized for seamless performance" even as software updates were deployed. In truth, the Galaxy S22 suffered from a latent software defect introduced through the 6.1.1 Update that rendered the phones unstable, non-operational, or completely bricked.

149. These representations were material to reasonable consumers and uniformly disseminated to Plaintiff and Class Members across all sales channels. Plaintiff and Class Members relied on these false statements in deciding to purchase the Galaxy S22, reasonably believing the devices were suitable for critical tasks such as voice calls, system navigation, app functionality, and long-term use through updates.

150. Samsung also concealed and failed to disclose material facts regarding the phones, i.e. that they were susceptible to critical and potentially fatal defects resulting from software updates, including the Update Defect. Samsung

omitted the fact that installation of the 6.1.1 Update carried a high risk of causing device failure. Samsung became aware of these failures almost immediately after rollout, as confirmed by the volume of consumer complaints and community forum discussions,. Yet Samsung failed to offer any corrective disclosure, recall, or software rollback mechanism.

151. Samsung's actions constitute "actual fraud" under California Civil Code § 1572, because Samsung:

a. Knowingly made false representations about the Galaxy S22 phones' reliability, performance, and suitability for long-term use;

b. Positively asserted these representations with no reasonable basis;

c. Suppressed material facts known to Samsung concerning the risks and failures triggered by its own software updates; and

d. Promised reliable functionality and future optimization with no intent or ability to deliver on those promises.

152. Samsung's conduct further constitutes "deceit" under California Civil Code § 1710, in that Samsung willfully deceived Plaintiff and Class Members with the intent to induce reliance and alter their position to their detriment—specifically, by purchasing or continuing to use the Galaxy S22 without knowledge of the critical defect.

153. Samsung's misrepresentations and omissions were uniform across all Class Members. Had Plaintiff and Class Members known the true risks associated with the Galaxy S22 and the 6.1.1 Update, they would not have purchased the devices or would have paid substantially less.

154. As a direct and proximate result of Samsung's fraudulent conduct, Plaintiff and Class Members were damaged by overpaying for defective

smartphones, incurring out-of-pocket repair or replacement costs, and suffering loss of use, data, and time.

## COUNT VIII

***(Negligent Misrepresentation)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

155. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

156. Samsung owed a duty to Plaintiff and Class Members to provide truthful, accurate, and non-misleading information about the Galaxy Devices and the impact of official software updates, including the 6.1.1 Update. Given the high cost and critical daily use of smartphones, Samsung had a duty to ensure that its marketing and product representations reflected the true nature and performance of the devices.

157. Samsung made affirmative statements regarding the Galaxy S22 that were materially misleading, as discussed above. These statements were disseminated through advertisements, promotional materials, product packaging, Samsung's website, and third-party retailers.

158. At the time Samsung made these representations, it either knew or, in the exercise of reasonable care, should have known that the Galaxy S22 devices were defective or likely to fail when subjected to updates such as the 6.1.1 Update. Samsung failed to disclose the defect and continued to make representations about product quality and reliability that were inconsistent with consumers' real-world experience and Samsung's own internal knowledge.

159. Plaintiff and Class Members justifiably relied on Samsung's misrepresentations in deciding to purchase the Galaxy S22. They had no reason to suspect the devices were defective or that a manufacturer-issued update would cause complete device failure.

160. As a direct and proximate result of Samsung's negligent misrepresentations, Plaintiff and Class Members suffered damages including, but not limited to, overpayment for the product, loss of use, data loss, and expenses incurred in attempts to repair or replace defective devices.

161. Plaintiff and Class Members seek compensatory damages and all other relief the Court deems appropriate under law and equity.

**COUNT IX**

***(Unjust Enrichment)***

*(By Plaintiff, Individually and on Behalf of All Class Members, Against Defendants)*

162. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

163. Plaintiff and Class Members conferred a benefit upon Defendant Samsung by purchasing Galaxy smartphones—including the Galaxy S22 and other affected models—and paying a premium price based on Samsung's express representations regarding product quality, reliability, and long-term performance.

164. Samsung knowingly accepted and retained this benefit under circumstances that make it unjust and inequitable for Samsung to retain those funds without providing restitution. Specifically, Samsung retained money paid by Plaintiff and Class Members despite selling devices that were defective and failed to perform as advertised, particularly with regard to their update compatibility, software reliability, and basic communication functionality.

165. Plaintiff and Class Members reasonably relied on Samsung's representations that the Galaxy S22 was "engineered to last," would "get better over time" with software updates and included features such as "voice-targeting microphones [that] give you high-quality call performance." They purchased the devices in reliance on these material representations.

166. As a result of the undisclosed defect, Plaintiff and Class Members received substantially less than the value they paid for. The smartphones did not perform as promised or warranted, rendering them unfit for essential functions and depriving consumers of the benefit of their bargain.

167. Had Plaintiff and Class Members known of the defect and the associated risks tied to Samsung's software updates, they would not have purchased the Galaxy S22 or would have paid significantly less for the product.

168. Under California law, a claim for unjust enrichment may be stated as a cause of action for restitution. *See Hirsch v. Bank of America* (2003) 107 Cal.App.4th 708, 717 ("The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another.")

169. As a result of its wrongful conduct, Samsung has been unjustly enriched and should be required to disgorge all profits, revenues, and benefits it obtained from the sale of defective Galaxy S22 smartphones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

(a) Certifying this action as a class action, appointing Plaintiff as the Class representative, and designating the undersigned as Class counsel;

(b) A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

(c) A judgment awarding Plaintiff and all Class members restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class as a result of the unlawful, unfair and/or fraudulent business practices described herein;

(d) A judgment awarding Plaintiff and the Class damages under common law and/or by statute, and punitive damages;

(e) For injunctive relief, including without limitation, public injunctive relief, in the form of an order enjoining Defendants from continuing to violate the UCL, CLRA, and/or FAL as described herein, and/or an order enjoying Defendants from violating the UCL, CLRA and/or FAL in the future;

(f) Additional awards of up to $5,000 for physical, emotional, or economic damage for all senior citizen and disabled Class Members, pursuant to California Civil Code § 1780(b)(1);

(g) A judgment awarding Plaintiff and Class members their costs of suit, including reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and as otherwise permitted by statute or law, and pre- and post-judgment interest; and

(h) Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: October 31, 2025

*<u>/s/ Helen I. Zeldes</u>*

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
AMY C. JOHNSGARD (SBN 279795)
*ajohnsgard@sshhzlaw.com*
501 W. Broadway, Ste. 800
San Diego, CA 92101-3546
Tel: (619) 400-4990
Fax: (310) 399-7040

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
9415 Culver Blvd., #115
Culver City, CA 90232-2616

Tel: (619) 400-4990

*Counsel for Plaintiff Telon Weathington and the Proposed Class.*

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members hereby demand a trial by jury on all causes of action so triable.

Respectfully submitted,

Dated: October 31, 2025

*/s/ Helen I. Zeldes*

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
AMY C. JOHNSGARD (SBN 279795)
*ajohnsgard@sshhzlaw.com*
501 W. Broadway, Ste. 800
San Diego, CA 92101-3546
Tel: (619) 400-4990
Fax: (310) 399-7040

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
9415 Culver Blvd., #115
Culver City, CA 90232-2616
Tel: (619) 400-4990

*Counsel for Plaintiff Telon Weathington and the Proposed Class.*